# In the United States Court of Federal Claims

No. 15-1359C

(Filed: May 26, 2016)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **JAMES TELZROW and NANCY TELZROW,**    Plaintiffs,  v.  **UNITED STATES,**    Defendant. | Suit for alleged breach of contract; Wetlands Reserve Program; wetlands conservation easement setting out continuing obligations of plaintiffs and the government agency; plausible claim for breach.  **FILED**  MAY 26 2016  U.S. COURT OF FEDERAL CLAIMS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

James Telzrow and Nancy Telzrow, *pro se*, White Hall, Illinois.

James R. Sweet, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., for defendant. With him on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Scott D. Austin, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this breach of contract action, plaintiffs James and Nancy Telzrow ("the Telzrows") allege that the United States Department of Agriculture, acting through the Natural Resources Conservation Service ("Conservation Service" or "government"), breached a written contract for wetlands conservation on their farm, involving particularly wetlands restoration work in connection with a conservation easement. Because the government failed to answer their complaint within the prescribed time, the Telzrows filed a motion for entry of default under Rule 55 of the Rules of the Court of Federal Claims ("RCFC"). The government opposes the entry of default, and it requests leave to file out of time a motion to dismiss for lack of jurisdiction and failure to state a claim under RCFC 12(b)(1) and 12(b)(6).

# BACKGROUND[1]

A. *The Conservation Service Purchases an Easement from Nancy Telzrow*

The Conservation Service administered the Wetlands Reserve Program from 1985 to 2014, by which it sought to obtain easements from landowners for the purpose of restoring and protecting wetlands. Food Security Act of 1985, Pub. L. No. 99-198, Title XII, § 1237, 99 Stat. 1354 (1985), as added by Pub. L. No. 101-624, Tit. XIV, § 1438 (formerly codified at 16 U.S.C. § 3837), *repealed by* Agricultural Act of 2014, Pub. L. No. 113-79, § 2703(a), 128 Stat. 767 (2014). The easements generally allow federal officers and their contractors to enter the land and perform restoration work, and when the program was repealed in 2014 the Conservation Service had easements on roughly 2.3 million acres of land. *See Rodgers v. Vilsack*, No. 2:14-CV-81, 2015 WL 4488078, at *1 (E.D. Mo. July 23, 2015) (summarizing the history of the Wetlands Reserve Program in a quiet title action brought by a grantor of a conservation easement).

Pursuant to this program, the Conservation Service entered into a warranty easement deed with Nancy Telzrow on February 4, 1997, obtaining limited rights to her farm in Greene County, Illinois in exchange for $289,750. Compl. ¶ 5 & Ex. A (Warranty Easement Deed between the Conservation Service and Nancy Telzrow) ("Deed") at 2.[2] The deed granted the United States "rights, title and interest in 299.51 acres of land" comprising the "easement area" described in a plat attached to the deed. Deed at 2.[3] In particular, the deed granted the United States

> *the right to enter unto the easement area to undertake, at its own expense or on a cost share basis with the [l]andowner or other entity, any activities to restore, protect, manage, locate and mark the boundaries, maintain, enhance, and monitor the wetland* and other natural values of the easement area. The United States, at its own cost, may apply to or impound additional waters on the easement area in order to maintain or improve wetland and other natural values.

Deed at 4 (Part V. A) (emphasis added). Thus the United States had and has the right to "undertake" to restore the land, but it was not obligated to do so. The deed's preamble explained that "[i]t is the intent of the [Conservation Service] to give the [l]andowner the opportunity to participate in the restoration and management activities on the easement area." Deed at 2 (Preamble). The deed expressly reserved to Nancy Telzrow the rights of record title, quiet enjoyment, control of access, recreational uses, and subsurface resources. Deed at 3 (Part II).

---

[1]The following recitation of facts is drawn from the plaintiffs' complaint and two attachments. Those attachments are (1) a copy of the easement deed and (2) a letter from the Conservation Service to The Honorable Richard Durbin, United States Senator from Illinois.

[2]Nancy Telzrow signed the deed in her capacity as trustee for the January 24, 1991 Revocable Living Trust of Nancy D. Telzrow. Deed at 1. James Telzrow signed the deed as a witness. Deed at 6.

[3]That plat has not been submitted to the court by either party.

The deed also included cost-sharing clauses, which allocated various expenses. The Telzrows "shall pay any and all real property and other taxes and assessments, if any, which may be levied against the land." Deed at 4 (Part III. D). The Telzrows further agreed to be responsible for "noxious weed control" and "control of pests," Deed at 4 (Part III. B), and to pay "all" the "costs involved in maintenance of fences and similar facilities to exclude livestock," "[e]xcept for establishment cost incurred by the United States and replacement cost not due to the [l]andowner's negligence or malfeasance." Deed at 4 (Part III. C). The deed likewise assigned responsibility to the Telzrows to terminate a farm tenancy on the land and to bring an eviction action "at [their] sole expense" if the tenant failed to leave the land. Deed at 6 (Part VII).

B. *The Conservation Service's Prime Contractor Restores the Land but Refuses to Pay His Subcontractor, Who in Turn Acquires a Mechanic's Lien on the Telzrows' Farm*

On June 5, 2012, the United States awarded a contract for restoration work on the Telzrows' land to Mr. H. K. Anders. Compl. ¶ 6 & Ex. B at 1 (Letter to The Honorable Richard Durbin, United State Senator for Illinois, from Jason A. Weller, Acting Chief, Natural Resources Conservation Service (Feb. 1, 2013)) ("Conservation Service Letter"). Mr. Anders in turn purchased materials on credit from a subcontractor called Landscape and Construction Solutions. Compl. ¶ 7; Conservation Service Letter at 1. Mr. Anders completed the work on September 11, 2012 and was paid by the United States on October 2, 2012, but he then filed for bankruptcy and never paid his subcontractor. Conservation Service Letter at 1. The Department of Agriculture was "notified" about these events and "refused to pay the subcontractor." Compl. ¶ 8.

Because the subcontractor had not been paid, it obtained a mechanic's lien on the Telzrows' farm pursuant to Illinois law, which lien the Telzrows challenged in state court. Compl. ¶¶ 8, 10. While their state court case was pending, the Telzrows appealed to the Department of Agriculture and were "told by Ms. Paula Hinson [that the United States was] not going to pay the claim or any other expenses incurred by the Telzrows despite the terms of the easement document between the Telzrows and the [Department of Agriculture]." Compl. ¶ 8. However, the Department of Agriculture did provide "all the documents associated with the [f]ederal construction contract in an effort to assist [the Telzrows] in having the lien lifted from the property." Conservation Service Letter at 1. The Telzrows presented these documents to the state court, which "recognize[d] this was a contract between [the Department of Agriculture] and [H. K.] Anders" but ruled that this circumstance "did not relieve [the Telzrows] from liability under the Illinois [m]echanic[']s lien law." Compl. ¶ 10.

The Telzrows then contacted Senator Durbin, who inquired of the Conservation Service about the Telzrows' case. *See* Conservation Service Letter at 1. The Conservation Service replied to Senator Durbin on February 1, 2013, explaining that it was aware of the Telzrows' allegations and that it had provided them with the Anders contract documents in an attempt to help their state court case. *Id.* Nonetheless, the Conservation Service took the position that it "has no authority to intervene and is a bystander in this payment dispute between the contractor and the subcontractor." *Id.*

The letter further explained that Mr. Telzrow had requested that the Conservation Service buy back the easement. Conservation Service Letter at 1. In that respect, the Conservation

Service asserted that it lacked authority to do so under then-extant 7 C.F.R. § 1467 and Executive Order 11990 unless there was "a clear and compelling public need for the easement action, . . . no reasonable alternative to meet such a compelling need, and [the Conservation Service] would be the same or better regarding budget and ecological considerations." *Id.* at 1-2. In the Conservation Service's view, these "threshold criteri[a]" were not presented in the Telzrows' case. *Id* at 2.

### C. *The Telzrows Pay the Subcontractor and File this Breach of Contract Action*

"[I]n an effort to limit legal expenses and protect their farm from a forced sale should the [subcontractor] prevail," the Telzrows settled with the subcontractor by purchasing its claim for $42,384.90. Compl. ¶ 11. On November 12, 2015, they filed this complaint. They allege the United States breached its contract when it "refused to pay for services provided by [the subcontractor] thus exposing [the] Telzrows to legal cost and construction charges." Compl. ¶ 14. As a remedy they seek money damages, a declaration removing the easement from their property, and other "equitable consideration." Compl. at 5.

### D. *The Government Fails to Answer the Telzrows' Complaint*

The government's answer to the complaint was due on January 11, 2016. *See* RCFC 12(a)(1)(A) (providing the United States with 60 days to answer a complaint). On November 25, 2015, counsel for the government entered an appearance with the court. Notice of Appearance, ECF No. 3. On January 5, 2016, the government requested an enlargement of 60 days, to and including Friday, March 11, 2016, to file an answer. Def.'s Mot. for an Enlargement of Time, ECF No. 4. The court granted that request over plaintiffs' opposition. Order of Jan. 21, 2016, ECF No. 7.

Despite this extension of time to answer, the government failed to respond by March 11, 2016. Plaintiffs in turn filed a motion for entry of default on March 14, 2016. Pls.' Mot. for Entry of Default ("Pls. Mot."), ECF No. 8. On March 17, 2016, defendant filed an opposition to plaintiffs' motion for entry of default, along with a motion for leave to file a motion to dismiss out of time. Def.'s Opp'n to Pls.' Mot. for Entry of Default and Mot. for Leave to File Mot. to Dismiss Out of Time ("Def.'s Opp'n"), ECF No. 9. The government's opposition explained that its trial attorney had mailed a motion to dismiss to plaintiffs on March 11, 2016. *Id.* at 1. That trial attorney "also provided the original motion [to dismiss] to his administrative assistant to file with the [c]ourt. Due to an oversight, his administrative assistant inadvertently failed to file the motion." *Id.* The clerk of this court has not entered a default against the United States pursuant to RCFC 55(a).

## PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT AND APPLICATION FOR JUDGMENT OF DEFAULT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default." RCFC 55(a).[4] An entry of default under RCFC 55(a) is a prerequisite to entry of a default judgment pursuant to RCFC 55(b).  A party "plead[s] or otherwise defend[s]" by timely filing an answer pursuant to RCFC 7 or a motion to dismiss under RCFC 12.  *See* 10 James Wm. Moore, *Moore's Federal Practice* § 55.11(2)(a)(i)-(iii) (3d ed. 2012) (discussing Fed. R. Civ. P. 55(a), which is identical to RCFC 55(a)).  A party's entry of an appearance with the court does not establish that the party has "otherwise defend[ed]." Instructively, RCFC 55(b) contemplates giving notice of an impending default judgment to a party that "has appeared," implying that an appearance alone is insufficient to prevent entry of a default. *Moore's Federal Practice* § 55.11(2)(b)(ii); *see also United States v. $23,000 in United States Currency*, 356 F.3d 157, 163-64 (1st Cir. 2004) (holding that a defendant did not "otherwise defend" even though he had appeared before the court).  Nor is a motion for an enlargement of time an action to "otherwise defend." *See, e.g.*, *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (affirming default judgment when defendants failed to answer despite two extensions granted by the trial court).  The clerk determines whether a default has occurred and annotates that default on the docket without any action by the judge assigned to the case. *See Plus Medical, LLC v. United States*, No. 14-600C, 2014 WL 5446019, at *1 (Fed. Cl. Oct. 27, 2014).  If it is not evident that the defendant has defaulted, the clerk may await instruction from the court, which has authority to enter a default. *See Systems Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985) (reasoning that the court, in addition to the clerk, has authority to enter a notation of default on the docket).

Pursuant to RCFC 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under RCFC 60(b)."  Whereas RCFC 55(c) permits the court to set aside an entry of default for good cause, RCFC 60(b) sets a somewhat higher bar, requiring the court to find "mistake, inadvertence, surprise, or excusable neglect," among "other reason[s] that justif[y] relief."  A precedential decision of the Federal Circuit analyzing "excusable neglect" under RCFC 60(b) has held that the court should balance three factors: "(1) whether the non-defaulting party will be prejudiced; (2) whether the defaulting party has a meritorious defense; and (3) whether culpable conduct of the defaulting party led to the default." *Information Sys. and Networks Corp. v. United States*, 994 F.2d 792, 795 (Fed. Cir. 1993). Although "excusable neglect" requires a more demanding showing than "good cause," subsequent decisions of this court have applied the court of appeals' multi-factor balancing test for "excusable neglect" under RCFC 60(b) when analyzing "good cause" under RCFC 55(c). *E.g.*, *Plus Medical*, 2014 WL 5446019, at *2; *Westec Co. v. United States*, 32 Fed. Cl. 576, 578 (1995). Other circuits follow this approach, applying a similar three-factor test for "excusable neglect" when weighing "good cause" under Fed. R. Civ. P. 55(c). *See Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011); *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010);

---

[4]In this court, the clerk "must enter" a default if a party "has failed to plead or otherwise defend," RCFC 55(a), but the clerk cannot enter a default judgment without action by the court, *see* RCFC 55(b)(1) (showing that entry of a default judgment by the clerk is "[n]ot used," but the part of the rule providing for entry of such a judgment by the court, RCFC 55(b)(2), tracks verbatim the text of Fed. R. Civ. P. 55(b)(2) except for the opening prepositional phrase).  And, even though the United States is the only defendant in this court, the provisions of Fed. R. Civ. P. 55(d) titled "Judgment against the United States" are "[n]ot used" in RCFC 55.

*Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783-84 (8th Cir. 1998).

In this instance, the Telzrows proved the United States' default by affidavit, *see* Pls.' Mot. Ex. A (Aff. of James and Nancy Telzrow), as confirmed by the court's docket. Although the government's trial counsel had made an appearance and filed a motion for an extension of time, neither of those acts constituted a defense within the meaning of RCFC 55(a). *Benny*, 799 F.3d at 492 (filing an extension request is insufficient); *$23,000 in United States Currency*, 356 F.3d at 163 (filing a notice of appearance is insufficient).[5] Nonetheless, good cause exists to set aside the default under RCFC 55(c). The government's trial attorney had prepared a motion to dismiss by March 11, 2016 and had served it by mail on plaintiffs, but because of inadvertence or miscommunication, he did not ensure that it was filed with the court. Upon realizing his mistake, the government's trial attorney filed a motion to file his response out of time, six days late, *i.e.*, on March 17, 2016. Such neglect does not rise to the level of culpable conduct. *Cf. United States v. Assorted Firearms*, 605 Fed. Appx. 603, 605 (9th Cir. 2015) (holding negligent conduct was not culpable, meaning not devious, deliberate, or in bad faith). Additionally, the government's motion to dismiss presents a non-trivial defense of failure to state a claim. Finally, the court discerns no prejudice to plaintiffs that would result from setting aside the default. Prejudice in this context means "delay" resulting in "loss of evidence" or "greater opportunity for fraud and collusion," *Swarna*, 622 F.3d at 142 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2699, at 169 (3d ed. 1998)), none of which is present here. Because all three factors weigh in favor of the United States, the court will not enter a default.

## UNITED STATES' MOTION TO DISMISS

The government has requested leave to file out of time a motion to dismiss pursuant to RCFC 12(b)(1) for lack of jurisdiction and RCFC 12(b)(6) for failure to state a plausible claim for breach of contract. Def.'s Opp'n at Ex. A (Def.'s Mot. to Dismiss ("Def.'s Mot.")). The court grants the government's request pursuant to RCFC 6(b)(1)(B) on the basis of excusable neglect for the reasons outlined in the discussion of RCFC 55(c).

### A. *Jurisdiction*

This court has jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Telzrows allege that the Conservation Service breached a written contract with them, and as a remedy they seek money damages. Compl. at 1-5. These allegations are sufficient to confer jurisdiction on the court. *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346,

---

[5]The Clerk of Court could have noted a default on the docket under these circumstances. But because there were contested motions on this point, the clerk understandably did not enter a default.

1353-54 (Fed. Cir. 2011) (citing *Lewis v. United States*, 70 F.3d 597, 602-04 (Fed. Cir. 1995); *Gould, Inc. v. United States*, 67 F.3d 925, 929-30 (Fed. Cir. 1995)).

Separately, the Telzrows seek a declaration that the easement deed is invalid. Compl. at 5; Pls.' Appl. for Default Judgment at 2, ECF No. 11 ("[T]his contract should be voided for lack of mutual[ity] and the [Conservation Service's] obvious disregard [of its] terms."). Declaratory relief is available in Tucker Act suits when it is an "incident of and collateral to" a money judgment, meaning it must be "subordinate to a money judgment." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). For example, this court has jurisdiction to determine, as a prerequisite to a claim for back pay, that a soldier's discharge was erroneous, even if the court then holds that the soldier is not entitled to back pay. *Id.* In the Telzrows' case, a declaration that the easement deed is invalid could be subordinate to a judgment for the government, because the Telzrows then would have no basis for a claim of breach of contract. *See Gould*, 67 F.3d at 929-30 (holding that the Tucker Act confers jurisdiction to hear claims for alleged breach of contract, and that jurisdiction is not lost if the court later determines on the merits that the alleged contract is in fact void *ab initio* or invalid). But a determination that the easement deed is invalid cannot be incident to a money judgment for the Telzrows. As a matter of law, a plaintiff seeking damages for breach of contract must prove the existence of a valid contract. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). For that reason, the Telzrows must prove the easement deed is valid to prevail on their breach of contract claim. Their claim of contract invalidity is thus separate from their claim for breach, and consequently the court lacks jurisdiction to consider it.

B. *Whether Plaintiffs Have Stated a Plausible Claim for Breach of Contract*

1. *Standards for decision.*

A defendant can seek dismissal under RCFC 12(b)(6) if the complaint fails to state a claim upon which the court can grant relief. Under that rule, a complaint must "contain sufficient factual matter," which for the purpose of the motion the court assumes to be true, "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That rule is applied with less stringency when the complaint is filed by a *pro se* plaintiff. *Pieczenik v. Bayer Corp.*, 474 Fed. Appx. 766, 770 (Fed. Cir. 2012) (citing *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)). In such instances, the court should search the complaint and record "to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969).

2. *Elements of an alleged contract.*

"To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos*, 877 F.2d at 959; *see also Hercules Inc. v. United States*, 24 F.3d 188, 197 (Fed. Cir. 1994), *aff'd*, 516 U.S. 417 (1996).

As an initial matter, the court concludes that plaintiffs have established a valid contract stated in the warranty easement deed respecting the conservation easement on their property.

Compl. at 1-5; Deed at 1, 7. That contract was adjoined pursuant to former 16 U.S.C. § 3837. Deed at 2. The deed effects a transfer of property rights, was entered with consideration, and sets mutual continuing obligations of the parties.

With the issue of *prima facie* validity resolved, the court turns to the deed's plain language to decide if the Telzrows have plausibly alleged a breach of contract. *See Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) ("Contract interpretation begins with the language of the written agreement."). "When interpreting a contract, if the provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *Bell/Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014) (quoting *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (in turn quoting *Alaska Lumber & Pulp Co. v. Madigan*, 2 F. 3d 389, 392 (Fed. Cir. 1993))), (internal quotation marks omitted). "A contract must also be construed as a whole and 'in a manner that gives meaning to all of its provisions and makes sense.'" *Id.* (quoting *McAbee Constr.*, 97 F.3d at 1435).

Pursuant to Part V. A of the deed, the government agreed "to undertake, at its own expense or on a cost share basis with the [l]andowner or other entity, any activities to restore, protect, manage, locate and mark the boundaries, maintain, enhance, and monitor the wetland and other natural values of the easement area." Deed at 4. That language contemplates restoration work "undertake[n]" by the United States at its sole option. It does not give the landowner any rights or responsibilities in the restoration work, because the landowner has given up all rights except those reserved in Part II. Deed at 2. Notably, the deed's preamble states that "it is the intent of the [Conservation Service] to give the [l]andowner the *opportunity* to participate in the restoration and management activities on the easement area," Deed at 1 (emphasis added), but that language is precatory and does not obligate the government. For that reason, the Ninth Circuit has held that this form of Conservation Service deed "nowhere grants [a landowner] the power to veto a conservation plan of which it disapproves." *Big Meadows Grazing Ass'n v. United States ex rel. Veneman*, 344 F.3d 940, 943 n.4 (9th Cir. 2003). This precatory language instead contemplates potential agreements between the landowner and government, separate and apart from the easement deed, about what and how to perform and share costs of restoration work. *See id.* at 941-42 (noting that after signing the easement deed, the government offered to have the landowners participate in restoration, which offer they rejected); *see also Benson v. Russell's Cuthand Creek Ranch, Ltd.*, No. 14-cv-161-JRG, __ F. Supp. 3d __, __, 2016 WL 2344466, at *1 (E.D. Tex. May 3, 2016) (noting, in a conservation easement case in which the deed contained the same cost sharing provision at issue here, that the Conservation Service may enter into subsequent cooperative agreements regarding restoration work, in that case with "[an]other entity," Ducks Unlimited).

The decision in *Big Meadows* demonstrates that the United States can and does assume sole responsibility to perform and pay for restoration. In that case, the landowners granted an easement to the United States believing that it would do minimal restoration work on a streambed. 344 F.3d at 941-42. After the United States acquired the easement, it proposed to do major restoration work, including impoundment of waters, and it provided the landowners with a proposed plan and budget for a cooperative restoration agreement. *Id.* The landowners refused the offer, objecting to the "scope and type of restoration activities." *Id.* at 942. In response, the United States informed the landowners that it did not need their participation, and it began work.

8

*Id.* After the landowners sued, the district court found for the United States and the Ninth Circuit affirmed, holding that the landowners had no right to participate in the restoration. *Id.* at 943 & n.4. While the court's opinion primarily addressed statutory issues, the government's brief made extensive arguments about continuing obligations of the parties under the deed, informing the court that the landowners were not participating in the restoration in any form, except that the government was paying them to install fences based on a separate contract. Brief of Appellee at 25 n.8, *Big Meadows,* 344 F.3d 940 (No. 02-35764), 2002 WL 32181407. The government explained that "[a]n 'opportunity to participate' [in the restoration activities] is obviously not a guarantee of any particular level of participation. The Department [of Agriculture] may offer the landowner the opportunity to carry out work, but if the owner rejects the offer, the United States is free to hire someone else or do the work itself." *Id.* at 24-25.

    The Conservation Service's easement deed thus enables, but does not require, the United States to work with landowners regarding restoration work. Absent a separate agreement, the landowner has no role in the restoration. *Big Meadows,* 344 F.3d at 943. Landowners correlatively are or should be shielded from the burdens of restoration absent a separate and further agreement. *Cf. Benson,* 2016 WL 2344466, at *4 (reciting how a landowner agreed, in a contract separate from the easement deed, to pay 10% of restoration costs). With respect to restoration costs, the operative phrase says the United States will undertake restoration work "at its own expense." Deed at 4. The subsequent phrase "or on a cost share basis with the [l]andowner" is precatory and dependent upon whether the government opts to invite participation and share costs with the landowner. The deed's provisions contextually support that reading. Other contract provisions use mandatory language when imposing costs on the Telzrows. In Part III. C the "costs involved in maintenance of fences" "shall be the responsibility of the landowner." Deed at 4. And in Part III. D, the "landowner shall pay" real estate taxes. The mandatory language in these provisions distinguishes the permissive language of Part V. A. For these reasons, the court construes the deed as placing restoration costs solely on the government, absent a separate agreement.[6]

    Based on the facts alleged in the complaint, in this instance, at least a part of the cost of restoring the wetlands in the easement area ultimately was imposed on the Telzrows, despite the United States' obligation to pay for such costs. Compl. ¶¶ 11, 14 (alleging the Telzrows paid "construction charges"); *see also* Compl. ¶ 1, 12 (alleging an express contract was breached, and citing specific contractual obligations of the United States that plaintiffs allege were unfulfilled). That is sufficient to state a plausible claim for breach of contract, either in terms of breach of warranty or failure to perform an affirmative obligation. *See, e.g., Chevron U.S.A., Inc. v. United States,* 20 Cl. Ct. 86, 89 (1990) (entering partial summary judgment for plaintiff as to breach of contract when plaintiff proved United States had failed to pay for operating costs of a jointly-managed oil reserve, applying contract language obligating each of the parties to "bear its respective share of all costs . . . incurred . . . in operation" of the oil reserve).

---

    [6]The deed contains a provision stating that "[a]ny ambiguities . . . shall be construed in favor of the United States to effect the wetland and conservation purposes [of the deed]." Deed at 5 (Part VI. B). The court finds the deed unambiguous, but even it was, this clause would not necessarily favor the government in the context of this particular breach of contract action.

9

The government, however, interprets the Telzrows' complaint as seeking an open-ended indemnity, and with that characterization it argues that the Telzrows' claim fails because the deed contains no express indemnity clause. Def.'s Mot. at 5-7. The government further contends no implied-in-fact indemnity can be discerned because Congress made no appropriation for an indemnity. Def.'s Mot. at 6 (citing Agriculture, Rural Development, Food and Drug Administration and Related Agencies Appropriations Act of 1996, Pub. L. 104-37, 109 Stat. 299 (Oct. 21, 1995)). To that end, the government cites cases holding that government officers lack authority to enter open-ended indemnity agreements under the Anti-Deficiency Act, 31 U.S.C. § 1341, without a prior appropriation for that purpose. *Id.* (citing *Shell Oil Co. v. United States*, 751 F.3d 1282, 1299 (Fed. Cir. 2014)).

The government's argument misstates the gravamen of the Telzrows' complaint. The complaint seeks damages caused by the government's alleged breach of its promise to undertake restoration at its own expense, not an open-ended indemnity to reimburse losses the landowner might suffer at the hands of the government of third parties contracting with the government. *See Chevron*, 20 Cl. Ct. at 89 ("But this is not an action for indemnification. Rather, plaintiff stated a claim for breach of a contractual obligation to share in operating costs."); *see also Union Pacific R.R. v. United States*, 52 Fed. Cl. 730, 733 (2002) (dismissing indemnity claim, but permitting plaintiff to show damages for breach of contract if it could prove its loss was a "direct and foreseeable consequence of [the government's] breach of some other contractual duty"); *Johns-Manville Corp. v. United States*, 12 Cl. Ct. 1, 19 (1987) (explaining that indemnity claims seek all losses within the scope of an indemnity clause, while breach claims generally seek expectation damages), *subsequent ruling*, 13 Cl. Ct. 72, *vacated for lack of jurisdiction under 28 U.S.C. § 1500*, 855 F.2d 1571 (Fed. Cir. 1988). *Compare Massachusetts Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1232 (Fed. Cir. 1997) (holding government could be liable for breach of a contractual obligation to purchase insurance for plaintiff), *with Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1344 (Fed. Cir. 2008) (concluding that the plaintiff did not "point to" a provision of its "cost-share agreement" that was breached but alleged only an implied-in-fact indemnity, and consequently dismissing the action for lack of appropriation).

One issue remains. The Telzrows have alleged in a supplemental filing that they "relied" upon their understanding that the Conservation Service would post a bond or require its prime contractor to post a bond, yet the Conservation Service failed to do so. Pls.' Appl. for Default Judgment at 1; Pls.' Reply to Def.'s Opp'n at 1, ECF No. 13.[7] The government construes that statement as alleging a claim under the Miller Act, 40 U.S.C. § 3131, which the government contends is not money-mandating within the meaning of the Tucker Act. Def.'s Opp to Pls.' Appl. for Default Judgment at 2 (citing *United Elec. Corp. v. United States*, 647 F.2d 1082, 1084, n.4 (Ct. Cl. 1981)). Construing the Telzrows' filing leniently, they appear to allege an actual promise by the United States to cause a bond to be posted for subcontractors, which promise was not honored. Pls.' Appl. for Default Judgment at 1. Such allegations state a claim for breach of contract. *See Massachusetts Bay*, 129 F.3d at 1232 (holding that plaintiff stated a claim for breach of contract when it alleged the government failed to purchase insurance for

---

[7]The government treats this filing as an amendment to the complaint, Def.'s Opp'n to Pls.' Appl. for Default Judgment at 2, ECF No. 12, and the court concurs with that characterization.

plaintiff as agreed by contract). Factual development is needed to determine whether the parties did so agree.[8]

## CONCLUSION

The plaintiffs' motion for entry of default and application for default judgment are DENIED. The government's request for leave to file a motion to dismiss out of time is GRANTED. That motion to dismiss is GRANTED IN PART insofar as the court lacks jurisdiction over plaintiffs' claim for a declaration that the easement is invalid, but it is otherwise DENIED.

Defendant shall file an answer to plaintiffs' complaint on or before June 29, 2016.

It is so ORDERED.

_____
Charles F. Lettow
Judge

---

[8]The deed attached to plaintiffs' complaint does not appear to contain an integration clause, which does not preclude a further contract from being either established or affected by parol evidence.